Clerk's Office
Filed Date: 6/12/23

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

GERALD R. FINKEL, *as chairman of the Joint Industry Board of the Electrical Industry*,

                                    Petitioner,

            v.

J&H ELECTRICAL CONTRACTING, INC.,

                                    Respondent.

---------------------------------------------------------------

**MEMORANDUM & ORDER**
22-CV-4293 (MKB)

MARGO K. BRODIE, United States District Judge:

Petitioner Gerald R. Finkel, chairman of the Joint Industry Board of the Electrical Industry, filed the above-captioned petition on July 21, 2022, to confirm an arbitration award against Respondent J&H Electrical Contracting, Inc. (Pet. to Confirm Arb. Award ("Pet."), Docket Entry No. 1; Pet'r's Mem. in Supp. of Pet. ("Pet'r's Mem."), Docket Entry No. 4.) Petitioner alleges that Respondent failed to remit required contributions to certain employee benefit plans pursuant to collective bargaining agreements, section 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1132(a)(3), and section 301 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185. (Pet. ¶ 1.) On August 17, 2022, the Court granted Petitioner's request to deem the petition unopposed. (Order dated Aug. 17, 2022; Pet'r's Letter dated Aug. 16, 2022, Docket Entry No. 11.)

For the reasons set forth below, the Court grants Petitioner's motion to confirm the arbitration award in the amount of $117,381.14, plus interest accrued until entry of judgment,

and awards Petitioner $625 in attorneys' fees and $477.57 in costs for a total damages award of $118,483.71 plus accrued interest.

## I.   Background

Petitioner is the chairman of the Joint Industry Board (the "JIB") located in Flushing, New York.  (Pet. ¶ 4.)  The JIB is "the administrator of various employee benefit multi-employer plans [including ERISA Plans,[1]] established and maintained pursuant to a collective bargaining agreement between Local Union No. 3 of the International Brotherhood of Electrical Workers" (the "Union"), the American Federation of Labor and Congress of Industrial Organizations, and certain other employers and employer associations.  (*Id.*)  "Per the . . . collective bargaining agreement, the JIB receives directly from each signatory employer a weekly remittance consisting of contributions to each of the ERISA Plans, except the DSP,[2] as well as a Union

---

[1]  The JIB "is the administrator and fiduciary within the meaning of . . . 29 U.S.C. §§ 1002(16)(A)(i) and 1002(21)(A)" of certain employee benefit plans, including:

> the Pension, Hospitalization and Benefit Plan of the Electrical Industry, the Dental Benefit Fund of the Electrical Industry, the Educational and Cultural Trust Fund of the Electrical Industry, the Annuity Plan of the Electrical Industry, . . . the Health Reimbursement Account Plan of the Electrical Industry, the Deferred Salary Plan of the Electrical Industry (the "DSP"), . . . the Joint Apprenticeship and Training Program . . . , and the National Electrical Benefit Plan ("NEBF") (collectively the "ERISA Plans").

(Pet. ¶ 5.)  "Each of the ERISA Plans is an employee benefit multiemployer plan within the meaning of" 29 U.S.C. §§ 1002(3) and 1002(37) and "is also jointly administered by a board of trustees that is comprised of labor and management representatives who share equal representation in the administration of the [p]lans in accordance with . . . 29 U.S.C. § 186(c)(5)." (*Id.* ¶ 7.)

[2]  "The DSP is . . . a tax-qualified profit-sharing plan with a cash or deferred arrangement within the meaning of 401(k) of the Internal Revenue Code."  (*Id.* ¶ 8.)

2

assessment collected by the signatory employer from each Union member employed (the "Union Assessment").[3]  (*Id.* ¶ 6.)

On May 15, 2020, the Union notified Petitioner by letter that Respondent had agreed to the terms of the New York City Housing Authority's Project Labor Agreement (the "NYCHA PLA").  (*Id.* ¶¶ 14, 17; *see also* Union's May 2020 Letter, annexed to Pet. as Ex. A, Docket Entry No. 1-1; NYCHA PLA 3–4, Schedule A, annexed to Pet. as Ex. B, Docket Entry No. 1-2.) Pursuant to the NYCHA PLA, Respondent agreed to be bound to the collective bargaining agreement among (1) the Union, (2) the New York Electrical Contractors' Association, Inc. and (3) the Association of Electrical Contractors, Inc., covering the periods from April 10, 2019 through April 13, 2022 and April 13, 2022 through April 9, 2025 (the "CBAs").  (Pet. ¶¶ 15–16; Agreement & Working Rules 2019–2022, annexed to Pet. as Ex. C, Docket Entry No. 1-3; Mem. of Agreement, annexed to Pet. as Ex. D, Docket Entry No. 1-4.)

"The CBAs require Respondent . . . to make [r]equired [c]ontributions to the ERISA [p]lans, the [n]on-ERISA [p]lans, and to the Union for all work within the trade and geographical jurisdiction of the Union and to submit weekly payroll reports that provide the name, gross wages, and hours worked for each worker employed by the company on whose behalf [r]equired [c]ontributions are made."  (Pet. ¶ 19.)  The CBAs further provide that (1) "the parties . . . agree to . . . be bound by the provisions of the [plan and its supporting documents] . . . including . . . the Policy for the Collection of Delinquent Contributions" and that (2) "an employer 'shall be liable for the remedies under [s]ection 502(g)(2) of ERISA, including liquidated damages . . . in

---

[3]  "The JIB acts as a . . . collection agent with respect to the Union Assessment and NEBF contribution."  (*Id.* ¶ 6.)  "[T]he JIB may also collect employee loan payments due to the Union and certain [p]lans, and contributions to fund the operations of the JIB (collectively, the 'Non-ERISA Plans')."  (*Id.* ¶ 9.)

the event of entry of judgment against the [e]mployer in an action to collect delinquent contributions.'" (*Id.* ¶¶ 20–21.)

The JIB established (1) a "Policy for the Collection of Delinquent Contributions" (the "Collection Policy"), (*Id.* ¶ 22), and (2) "Arbitration Procedures and Rules Governing Employer Delinquency Disputes and Audits" (the "Arbitration Procedures"), (*Id.* ¶ 23).  Pursuant to the Collection Policy, "if an employer fails to remit contributions and has not submitted payroll reports for such unpaid contributions, the JIB may 'use a prior week's payroll report submitted by the employer to calculate the amount of [c]ontributions due from the employer.'" (*Id.* ¶ 24; Collection Policy art. II(F)(1), annexed to Pet. as Ex. F, Docket Entry No. 1-6.)  The Collection Policy also provides that an employer shall be liable for liquidated damages and attorneys' fees and costs if legal action is commenced.  (Pet. ¶ 26; Collection Policy art. II(E)(2)).

"The Arbitration Procedures provide that the arbitrator shall have the jurisdiction to determine any disputes between the 'JIB against an [e]mployer, related to the [e]mployer's obligation to contribute to the [f]unds, including but not limited to [a]udits, [d]elinquencies, interest, liquidated damages, and attorneys' fees and costs,'" and "that if the arbitrator finds in whole or in part for the JIB, the employer shall be liable for the arbitrator's fees and attorneys' fees and costs."  (Pet. ¶¶ 27, 28; Arb. Procs. §§ 1(K), II(A), and X, annexed to Pet. as Ex. G, Docket Entry No. 1-7.)

A dispute arose between the parties regarding Respondent's reporting and remittance obligations for the periods from June 17, 2020 through July 8, 2020; July 22, 2020 through October 28, 2020; and November 17, 2021 through April 27, 2022.  (Pet. ¶ 29.)  Petitioner therefore initiated arbitration before arbitrator Stephen F. O'Beirne, Esq.  (*Id.* ¶ 30.)

On June 6, 2022, the arbitrator held an arbitration hearing.[4]  (*Id.* ¶ 32.)  JIB's counsel appeared on behalf of JIB and Respondent's principal appeared on behalf of Respondent.  (Op. & Award 1, 3, annexed to Pet. as Ex. K, Docket Entry No. 1-11.)  On September 17, 2018, the arbitrator issued an opinion finding that Respondent had violated the terms of the CBA and ordered it to pay a total of "$117,381.14 consisting of: (1) JIB Contributions of $76,227.70; (2) interest of $491.91; (3) estimated DSP contributions of $20,983.85; (4) additional interest in the amount of $1,419.94; (5) liquidated damages of $15,245.54; and (6) legal, administrative, and arbitration fees of $2,950."  (Pet. ¶ 35; *see also* Op. & Award 15–16.)  The arbitrator also found that Respondent would be "responsible for any costs, including reasonable attorneys' fees, incurred by the JIB in enforcing [the arbitration award]."  (Pet. ¶ 36; Op. & Award 6.)

Petitioner timely petitioned the Court to (1) confirm the arbitration award and award Petitioner $117,381.14 plus interest from the date of the arbitrator's award through the date of judgment, and (2) award judgment in favor of Petitioner of $1,202.57 in attorneys' fees and costs arising out of this petition.  (Pet. ¶ 48.)  Petitioner represented that Respondent has made no payments on the arbitration award, the arbitration award has not been vacated or modified and no such application is pending.  (*Id.* ¶¶ 37, 39.)

---

[4]  "At the [arbitration] hearing, Petitioner presented evidence that Respondent owed: (1) JIB Contributions for payroll weeks ending November 17, 2021 through May 22, 2022 of $76,227.70; and (2) estimated DSP Contributions for payroll weeks 25 through 28 and 30 through 44 of 2020 in the amount of $20,983.85."  (*Id.* ¶ 33.)  Respondent did not contest JIB's calculations.  (Op. & Award 4, annexed to Pet. as Ex. K, Docket Entry No. 1-11.)

## II.  Discussion

### a.  Standard of review

Rule 55 of the Federal Rules of Civil Procedure provides that there is "a 'two-step process' for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment."  *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (citing *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)). However, Rule 55 does not provide the appropriate mechanism for considering a petition to confirm an arbitration award, particularly where the non-appearing party appeared in the underlying arbitration proceeding.  *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 107–08, 109 (2d Cir. 2006) ("Rule 55 does not operate well in the context of a motion to confirm or vacate an arbitration award."); *Drywall Tapers & Pointers of Greater N.Y. Local Union 1974 v. Viscal Contracting Servs. Corp.*, No. 22-CV-7580, 2022 WL 17805387, at *2 (S.D.N.Y. Dec. 19, 2022) ("The Court of Appeals for the Second Circuit has explained that a default judgment is generally inappropriate in a proceeding to confirm or vacate an arbitration award.").

When a motion to confirm an arbitration award is accompanied by a record, "the petition and accompanying record should [be] treated as akin to a motion for summary judgment based on the movant's submissions."  *D.H. Blair & Co.*, 462 F.3d at 109.  Where a motion for summary judgment is unopposed, "the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial."  *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001).  "Before summary judgment may be entered, the district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed."  *Jackson v. Fed. Exp.*, 766 F.3d 189,

194 (2d Cir. 2014) (citing *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004)).  "In doing so, the court may rely on other evidence in the record even if uncited."  *Id.* (citing Fed. R. Civ. P. 56(c)(3)).

Although a summary judgment standard is applied to arbitration confirmation proceedings, "[a] federal court's review of labor arbitration awards is narrowly circumscribed and highly deferential — indeed, among the most deferential in the law."  *A&A Maint. Enter., Inc. v. Ramnarain*, 982 F.3d 864, 868 (2d Cir. 2020) (per curiam) (quoting *N.Y.C. & Vicinity Dist. Council of the United Brotherhood of Carpenters & Joiners of Am. v. Ass'n of Wall-Ceiling & Carpentry Indus.*, 826 F.3d 611, 618 (2d Cir. 2016)).  "[C]onfirmation of an arbitration award is 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court,' and the court 'must grant' the award 'unless the award is vacated, modified, or corrected.'"  *D.H. Blair & Co.*, 462 F.3d at 110 (first quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984); and then quoting 9 U.S.C. § 9); *see also Trs. of Mason Tenders Dist. Council Welfare Fund, Pension Fund, Annuity Fund, & Training Program Fund v. A.J.S. Project Mgmt., Inc.*, No. 19-CV-711, 2020 WL 6546212, at *2 (S.D.N.Y. Nov. 6, 2020) (quoting *D.H. Blair & Co.*, 462 F.3d at 109).  "The arbitrator's rationale for an award need not be explained, . . . [o]nly 'a barely colorable justification for the outcome reached' by the arbitrators is necessary to confirm the award."  *D.H. Blair & Co.*, 462 F.3d at 110 (first quoting *Barbier v. Shearson Lehman Hutton, Inc.*, 948 F.2d 117, 121 (2d Cir. 1991); then quoting *Landy Michaels Realty Corp. v. Loc. 32B–32J, Service Emps. Int'l Union*, 954 F.2d 794, 797 (2d Cir. 1992)).  Accordingly, "courts 'play only a limited role when asked to review the decision of an arbitrator.'"  *Tully Constr. Co. v. Canam Steel Corp.*, 684 F. App'x 24, 26 (2d Cir. 2017) (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987)).

**b.   The Court confirms the arbitration award**

Petitioner argues that confirmation of the arbitration award is warranted because (1) Respondent is bound by the CBAs, which "bind Respondent to the Collection Policy and Arbitration Procedures"; (2) Respondent failed to remit contributions, which authorized Petitioner to initiate arbitration; and (3) "the independent arbitrator acted within the scope of his authority in issuing the arbitration award."  (Pet.'s Mem. 3–4.)  In addition, Petitioner contends that "the arbitrator [properly] ordered Respondent to pay [Petitioner] a principal sum of delinquent contributions, as well as interest thereon, liquidated damages, [and] attorney's fees," pursuant to the CBAs, Collection Policy, and Arbitration Procedures.  (*Id.* at 4.)  Petitioner further represents that the arbitration award "has not otherwise been vacated, modified, or corrected."  (*Id.*)

Petitioner's motion to confirm the arbitration award is accompanied by the NYCHA PLA, the CBAs, the Collection Policy, the Arbitration Procedures, the Notice of Intent to Arbitrate, the Statement of Claims, the Prehearing Memorandum of Law, a breakdown of benefits owed submitted at the arbitration, and the arbitrator's award.   Based on the record before the Court, there is sufficient basis for the Court to deem Petitioner's application as an unopposed motion for summary judgment.  *See Trs. of the NYC Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Bilt NYG, Inc.*, No. 20-CV-3846, 2020 WL 7211184, at *1, 3 (S.D.N.Y. Nov. 19, 2020) (treating the petition as an unopposed motion for summary judgment where the petitioners "submitted undisputed evidence showing that the arbitrator was acting within the scope of his authority, and that the arbitration award was appropriate in this case"), *report and recommendation adopted*, 2020 WL 7183549 (S.D.N.Y. Dec. 7, 2020).

The arbitration award is supported by the record.   Respondent appeared at the arbitration hearing and did not contest the amounts owed or submit evidence rebutting Petitioner's documents, and the arbitrator's decision addressed the issues presented.  (Op. & Award 3–4); *see Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. RNW Electric Corp.*, No. 22-CV-8232, 2023 WL 3080776, at *2 (S.D.N.Y. Apr. 25, 2023) (confirming arbitration award where the violations stemmed from a collective bargaining agreement, the respondent failed to appear at the arbitration hearing, and there was "no evidence of a genuine dispute as to any material fact" before the district court); *Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. P & J Wood Floors, Inc.*, No. 22-CV-9386, 2023 WL 2186341, at *3 (S.D.N.Y. Feb. 23, 2023) (confirming award where "the record indicate[d] that the [a]rbitrator based his award on undisputed evidence").

In addition, the CBAs, Collection Policy, and Arbitration Procedures provide for the remedies awarded by the arbitrator.  (Pet. ¶¶ 19–28; Op. and Award 2–3); *see Bilt NYG, Inc.*, 2020 WL 7211184, at *3 (confirming arbitration award where "the amount and categories of damages awarded by the arbitrator correspond generally to those contemplated in the [collective bargaining agreement] and employer contribution policy — including principal and liquidated damages, interest, and [attorneys'] fees and costs").  The arbitrator's award reflects a considered judgment and there is no genuine dispute of material fact.

Accordingly, the Court grants Petitioner's motion to confirm the arbitration award in the amount of $117,381.14, plus interest accrued until entry of judgment.  *See Latronica v. Loc. 1430 Int'l Bhd. of Elec. Workers Pension Fund*, 820 F. App'x 12, 14 (2d Cir. 2020) (affirming district court's grant of prejudgment interest in an ERISA case).

### c.   **Attorneys' fees**

Petitioner requests $725 in attorneys' fees.  (Pet'r's Mem. 7.)  Petitioner asserts that

pursuant to the CBAs and section 502(g)(2) of ERISA, he is "entitled to an award of attorneys'

fees in connection with this action to recover delinquent . . . contributions by Respondent," and

that his fees are reasonable.  (*Id.* at 4–7.)  In support, Petitioner contends that his counsel billed

"for the services of associate [attorneys] at the rate of $290 per hour" a rate which was

"negotiated with a Board of Trustees consisting of members with long business and negotiation

experience and [which], as such, should be viewed as rates that a reasonable client would pay."

(*Id.* at 6.)  Petitioner also contends that this rate is "within the reasonable range for attorneys

representing ERISA benefit funds within the Southern and Eastern Districts of New York."  (*Id.*)

A district court must award attorneys' fees and costs in a successful ERISA action that

results in judgment in favor of the plan.  *See* 29 U.S.C. § 1132(g)(2)(D); *Labarbera v. Clestra

Hauserman, Inc.*, 369 F.3d 225, 226 (2d Cir. 2004) ("[When] the ERISA plan receives a

judgment in its favor . . . the statute renders fees and costs mandatory: 'the court shall award the

plan' reasonable fees and costs." (quoting 29 U.S.C. § 1132(g)(2))).  Trial courts are afforded

"considerable discretion in determining what constitutes reasonable attorney's fees in a given

case." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 151 (2d Cir. 2008).  In

exercising this discretion, trial courts must "bear in mind *all* of the case-specific variables

that . . . courts have identified as relevant to the reasonableness of attorney's fees in setting a

reasonable hourly rate." *Id.* (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v.

Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008)).  "'The most critical factor' in a district

court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree

of success obtained' by the plaintiff." *Id.* at 152 (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).  Other factors a court should consider include but are not limited to:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Arbor Hill*, 522 F.3d at 184, 190 (clarifying that district courts should consider, among others, the factors laid out in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989)).  The fee applicant bears the burden of "submit[ting] adequate documentation supporting the requested attorneys' fees and costs."  *Fisher v. SD Protection Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) (first citing *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983); and then citing *McCann v. Coughlin*, 698 F.2d 112, 131 (2d Cir. 1983)).

"A reasonable hourly rate is 'the rate a paying client would be willing to pay,' 'bear[ing] in mind that a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively.'"  *Spain v. Kinder Stuff 2010 LLC*, No. 14-CV-2058, 2015 WL 5772190, at *8 (E.D.N.Y. Sept. 29, 2015) (quoting *Arbor Hill*, 522 F.3d at 190) (alterations in original).  Such rates should be based on rates "prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation."  *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994) (first quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); then citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

"Determination of the prevailing market rates may be based on evidence presented or a judge's

11

own knowledge of hourly rates charged in the community." *Spain*, 2015 WL 5772190, at *8 (first citing *Farbotko v. Clinton Cnty. of N.Y.*, 433 F.3d 204, 209 (2d Cir. 2005); and then citing *Chambless*, 885 F.2d at 1059). "The 'community' is . . . the district where the district court sits." *Arbor Hill*, 522 F.3d at 190 (clarifying "forum rule") (citing *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983)). In the Eastern District of New York, courts "generally award junior associates an hourly rate of $100 to $200." *Ally Fin. Inc. v. Comfort Auto Grp. NY LLC*, No. 20-CV-1281, 2022 WL 3703955, at *18 (E.D.N.Y. Aug. 26, 2022), *report and recommendation adopted*, 2022 WL 4813505 (E.D.N.Y. Oct. 3, 2022).

Under the CBAs, the Collection Policy, and 29 U.S.C. § 1132(g)(2), Petitioner is entitled to reasonable attorneys' fees and costs in a court action to recover delinquent contributions. (Pet. ¶¶ 26, 36; Pet'r's Mem. 4–5); *see also P & J Wood Floors, Inc.*, 2023 WL 2186341, at *6 (granting attorneys' fees pursuant to a clause in a collective bargaining agreement). The Collection Policy specifies that "[o]nce legal action is commenced, [Respondent] shall also be liable for . . . attorney[s'] fees and costs incurred." (Collection Policy 5, annexed to Pet. as Ex. F, Docket Entry No. 1-6); *P & J Wood Floors, Inc.*, 2023 WL 2186341, at *3 ("By entering into the CBA, [the respondent] agreed to submit all disputes to binding arbitration . . . [and] the CBA and the [f]unds' [c]ollection [p]olicy explicitly entitle [p]etitioners to recover reasonable attorneys' fees and costs incurred while collecting delinquencies . . . Respondent has neither fully complied with the award nor provided any justification for its failure to do so. For these reasons, the Court finds that it is just and reasonable to award [p]etitioners reasonable attorneys' fees and costs pursuant to bringing this action.").

Petitioner's request for attorneys' fees is supported by contemporaneous time records specifying relevant dates, time spent, and work done. (*See* History Bill, annexed to Pet. as Ex. L,

Docket Entry No. 1-12).  The records reflect 2.5 hours of work, which the Court finds to be reasonable.  (Pet. ¶¶ 44–46; History Bill.); *see also Trs. of Ne. Carpenters Health, Pension, Annuity, Apprenticeship, & Labor Mgmt. Coop. Funds v. Excel Installations, LLC*, No. 19-CV-3012, 2020 WL 429135, at *5 (E.D.N.Y. Jan. 27, 2020) (finding 5.9 hours billed to be reasonable in a motion to confirm ERISA arbitration award); *Finkel*, 2019 WL 3281012, at *3 (finding 1.7 hours to be "a reasonable amount of time to have spent in preparation of the petition" to enforce arbitration award).

The records also reflect an hourly rate of $290 for an associate attorney with three years of experience representing clients in ERISA litigation.  (Pet. ¶¶ 43, 45; History Bill.)  The requested hourly rate of $290 is above the prevailing rate within this district for associates.  *See Trs. of Bldg. Trades Educ. Benefit Fund v. Culver Elec., LLC*, No. 17-CV-3448, 2020 WL 6927618, at *7 (E.D.N.Y. Nov. 3, 2020), *report and recommendation adopted in part*, 2020 WL 6902364 (E.D.N.Y. Nov. 24, 2020) (finding $200 per hour reasonable for associate attorney in ERISA litigation); *Div. 1181 Amalgamated Transit Union—N.Y. Emps.' Pension Fund v. D & A Bus Co., Inc.*, 270 F. Supp. 3d 593, 621–23 (E.D.N.Y. 2017) (finding $200 per hour reasonable for associate attorney in ERISA matter).

Petitioner's counsel, Adrianna R. Grancio, is a 2016 graduate of St. John's University School of Law and an associate at her law firm who has "regularly represented multiemployer benefit plans in ERISA litigation" since 2019, three years prior to the filing of this action.  (Pet. ¶ 43.)  Ms. Grancio has previously been awarded rates of $225–$250 per hour for similar work. *See Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Land Cruising Props. Inc.*, No. 21-CV-7877, 2022 WL 1125623, at *7 (S.D.N.Y. Apr. 15, 2022) (reducing Ms. Grancio's rate from $275 to $250 per hour and noting that "[c]ourts in the Second Circuit have consistently

awarded Ms. Grancio fees at an hourly rate of between $225 and $250"); *Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Eclipse Constr. Servs.*, No. 21-CV-7868, 2021 WL 5567752, at *6 (S.D.N.Y. Nov. 26, 2021) (reducing Ms. Grancio's rate from $275 to $225 per hour).  The Court finds that Ms. Grancio's requested fee of $290 is more than the prevailing rate for associates with her level experience and accordingly reduces it to $250.  *See, e.g.*, *Ally Fin. Inc.*, 2022 WL 3703955, at *19 (awarding rates of $325, $300, and $250 for associates with "nearly two decades," fifteen years, and seven years of experience, respectively).

The Court finds that 2.5 hours is reasonable for the attorneys' time expenditure but reduces Petitioner's counsel's hourly rate from $290 to $250.  Accordingly, the Court grants Petitioner's request for attorneys' fees in part and awards Petitioner $625 in attorneys' fees.

### d.   Costs

Petitioner requests "$477.57 in costs arising from the service fee and filing fees."  (Pet'r's Mem. 7; Pet. ¶ 47.)

The Court takes judicial notice of this district's $402 fee to file a petition and awards such to Petitioner.  *See Finkel v. G Energy Sol. & Servs. Inc.*, No. 22-CV-4276, 2022 WL 18859025, at *6 (E.D.N.Y. Dec. 19, 2022) (finding that the court "may take judicial notice of the $402 filing fee").  Although Petitioner does not provide receipts to substantiate its request for service fees of $75.57, the Court finds that such amount is reasonable.  *See id.* (finding that "although [p]etitioner has not submitted any supporting documentation . . . [he] has demonstrated costs in the amount of $442" for the court's filing fee and the service charges).

Accordingly, the Court grants Petitioner's request for costs in the amount of $477.57.

### III.  Conclusion

For the foregoing reasons, the Court grants Petitioner's motion to confirm the arbitration award but adjusts the attorneys' fees awarded.  The Court awards Petitioner (1) $117,381.14, plus interest accrued until entry of judgment, pursuant to its confirmation of the arbitration award, (2) $625 in attorneys' fees, and (3) $477.57 in costs, for a total damages award of $118,483.71 plus accrued interest.  The Court directs Petitioner to mail a copy of this Memorandum and Order to Respondent and directs the Clerk of Court to close the case.

Dated: June 12, 2023
      Brooklyn, New York

                    SO ORDERED:


                    _____s/ MKB_____
                    MARGO K. BRODIE
                    United States District Judge